**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **VINCENT FORTUNE AJAEGBU,** | : | **MOTION TO VACATE** |
| **Movant,** | : | **28 U.S.C. § 2255** |
| | : | |
| **v.** | : | **CRIMINAL INDICTMENT NO.** |
| | : | **1:13-CR-0418-SCJ-AJB-2** |
| **UNITED STATES OF AMERICA,** | : | |
| **Respondent.** | : | **CIVIL FILE NO.** |
| | : | **1:15-CV-0763-SCJ-AJB** |

**UNITED STATES MAGISTRATE JUDGE'S**
**FINAL REPORT AND RECOMMENDATION**

Movant, Vincent Fortune Ajaegbu, has filed a counseled 28 U.S.C. § 2255 motion to vacate, set aside, or correct his federal sentence entered under the above criminal docket number. The matter is before the Court on the § 2255 motion to vacate [Doc. 95], the Government's response [Doc. 103], Movant's reply [Doc. 104], Movant's post-hearing brief [Doc. 113], Respondent's post-hearing brief in response, [Doc. 115], and Movant's post-hearing reply, [Doc. 116]. For reasons discussed below, the undersigned **RECOMMENDS** that Movant's motion to vacate be **DENIED**.

## I. Background

The grand jury for the Northern District of Georgia indicted Movant on two counts of conspiracy to commit access device fraud. (Superseding Indictment, ECF No. 36.) Represented by J. Michael Treadaway, Movant pleaded guilty to the first

AO 72A
(Rev.8/82)

count. (Guilty Plea and Plea Agreement, ECF No. 60-1; Plea Hr'g Tr., ECF No. 65.) On September 9, 2014, the Court imposed a fifty-five month sentence. (J., ECF No. 67.) Movant directly appealed, but later voluntarily withdrew his appeal. (*See* Entry of Dismissal of USCA, ECF No. 101.)

Movant now raises a § 2255 challenge to his sentence and argues that counsel performed ineffectively as follows: (1) counsel foolishly argued that Movant was responsible for losses of $5,804.83, at the most $25,004.83,[1] and that he was responsible for only seven victims, resulting in Movant losing a three-point reduction for acceptance of responsibility,[2] and (2) counsel conceded that Movant's criminal history category was III when the Government untimely objected to the presentence investigation report (PSR) statement that his criminal history category was II. (Mot. to Vacate., ECF No. 95.)

---

[1] The Court and the parties sometimes refer to approximate, not exact, amounts in regard to the loss amount.

[2] Although Movant mentions his role in the offense, he bases his loss-of-acceptance claim on counsel's arguments on the loss amount and number of victims, chiefly on the loss amount. (Mot. to Vacate at 13.)



AO 72A
(Rev.8/82)

## II. 28 U.S.C. § 2255 Standard

Section 2255 allows a district court to vacate, set aside, or correct a federal sentence that was imposed in violation of the Constitution or laws of the United States or was imposed by a court without jurisdiction, exceeds the maximum sentence authorized by law, or is otherwise subject to collateral attack. 28 U.S.C. § 2255. Collateral relief, however, is limited. "Once [a] defendant's chance to appeal has been waived or exhausted, . . . we are entitled to presume he stands fairly and finally convicted," *United States v. Frady*, 456 U.S. 152, 164 (1982), and it is the movant's burden to establish his right to collateral relief, *Rivers v. United States,* 777 F.3d 1306, 1316 (11th Cir. 2015), *cert. denied*, _ U.S. _, 136 S. Ct. 267 (2015).

Section 2255 relief "is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (quoting *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988)) (internal quotation marks omitted); *see also Massaro v. United States*, 538 U.S. 500, 505-09 (2003) (holding that a constitutional claim of ineffective assistance of counsel generally is properly raised on collateral review in order to allow for adequate development and presentation of relevant facts).



AO 72A
(Rev.8/82)

## III. Discussion

### A. Acceptance of Responsibility

#### 1. Background

On June 26, 2014, Movant pleaded guilty to conspiracy with intent to defraud by trafficking in unauthorized access devices and obtaining things of value – with the overt acts showing five victims and losses of $5,804.83. (Guilty Plea and Plea Agreement; Superseding Indictment at 1.) The parties agreed that the Government would recommend up to a three-level adjustment for acceptance of responsibility with the following clarification –

> [T]he Government will not be required to recommend acceptance of responsibility if, after entering this Plea Agreement, the Defendant engages in conduct inconsistent with accepting responsibility. Thus, by way of example only, should the Defendant falsely deny or falsely attempt to minimize Defendant's involvement in relevant offense conduct . . . , the Government will not be required to recommend acceptance of responsibility.

(Guilty Plea and Plea Agreement at 5-6.)

In the PSR, the probation officer recommended a total offense level of twenty three, which included a ten-level increase based on a $168,437.88 loss amount; a four-level increase based on there being fifty or more victims; a four-level increase based on Movant's role as an organizer or leader; and a three-level reduction for acceptance



AO 72A
(Rev.8/82)

of responsibility. (PSR ¶¶ 48, 49, 52, 56, 57, ECF No. 71.) Movant objected to the number of victims, to his role, and the loss amount. (*Id*. ¶¶ 48, 49, 52.) On the loss amount, Movant argued (1) that the known amount of losses were $5,804.83 (as stated in the indictment) and possibly $25,004.83; and (2) that the increase should be two-levels only, based on a loss of less than $10,000. (*Id*. ¶ 48.) Movant repeated this argument in his sentencing memorandum. (Sentencing Mem. by Def. at 3-4, ECF No. 63.) In response, the Government in its sentencing memorandum argued that Movant's position vastly understated the loss amount and that he should not receive credit for acceptance of responsibility. (Sentencing Mem. by USA at 5, ECF No. 64.)[3]

At the sentencing hearing, the Government stated that it could show a loss amount of $118,849 and argued that in light of Movant's position on the number of victims, his role, and a low loss amount, he should not receive a three-level reduction for acceptance of responsibility. (Sentencing Hr'g Tr. at 7-9, ECF No. 94.) Mr. Treadaway stated that, based on plea negotiations, it was his understanding that

---

[3] The Government electronically served its sentencing memorandum at 10:47 p.m. on September 2, 2014, and the sentencing hearing was held beginning at 11:30 a.m. on September 4, 2014. (Sentencing Mem. by USA; Minute Entry for 9/4/2014, ECF No. 66.) It does not appear that Movant was aware of the Government's position before sentencing. However, the Government's position was presented at sentencing, and the Court allowed Movant time to discuss the matter with counsel.



AO 72A
(Rev.8/82)

Movant's role, the number of victims, and the loss amount could be argued at sentencing. (*Id*. at 11-12.) The Government responded that Movant's position – including the assertion of a low loss amount of approximately $5,000 – demonstrated a lack of acceptance of responsibility. (*Id*. at 13.)

The Court stated, "The question I'm going to ask you now is important in many ways. Is your argument that your client is only responsible for $5,000.00, that there is no evidence that's been shown that he is responsible for a loss amount greater than that?" (*Id*. at 16.) Mr. Treadaway asked to speak with Movant and, after doing so, informed the Court, "That is our intention, your honor, that $5[,]800.00 identified in the indictment is the only loss that meets the test of the preponderance of the evidence." (*Id*.) The Court clarified that the question pertained to the Court's decision on Movant's acceptance of responsibility, and counsel again confirmed, "that is my client's response I've been instructed to give, your honor." (*Id*. at 17.) The Court inquired regarding Movant's position on the number of victims, and counsel responded that the number should be seven victims. (*Id*.)

The Government then presented evidence of the loss amount and argued a loss amount of $118,849 and more than fifty victims. (*Id*. at 24-44, 60-61.) The Court found that Movant's adjusted offense level was twenty four, which included an eight-



AO 72A
(Rev.8/82)

level increase based on a loss amount of greater than $70,000 and less than $120,000; a four-level increase based on there being fifty or more victims; a four-level increase based on Movant's role as an organizer or leader; and no reduction for acceptance of responsibility. (*Id.* at 66-67.) The Court found as follows --

> In looking at relevant conduct here, there's two things that stand out to the Court, particularly the one of loss amount. You are not taking any consideration of any other level of conduct that makes me find greater than $70,000.00, [and the ] position you're taking with regard to the role of leader makes the Court feel that you are denying acceptance of responsibility, along with more than 50 victims. When you take all that together, the Court will agree and will not allow the acceptance of responsibility.

(*Id.*) Movant's guidelines range was sixty-three to seventy-eight months, with a statutory maximum of sixty months. (*Id.* at 69.) The Court imposed a below-guidelines term of imprisonment of fifty-five months. (*Id.* at 78.) In a *pro se* letter to the Court after sentencing, Movant asked the Court to reconsider his arguments regarding his role in the offense, the dollar amount, and the number of victims and asserted that the Government had accused him falsely. (Letter at 2, ECF No. 73.)

As indicated earlier, in his current § 2255 motion, Movant argues in Ground One that counsel was ineffective for asserting losses of only $5,804.83 and less than fifty victims, which resulted in Movant losing a three-point reduction for acceptance of



AO 72A
(Rev.8/82)

responsibility. (Mot. to Vacate at 13-15.) The Court held a hearing on Ground One, and additional evidence was taken. (Mot. to Vacate Hr'g Tr. at 7, 8, 10, ECF No. 112.)

**2. Hearing Evidence**

At the hearing, Movant testified that counsel made him aware that the Government was seeking a higher loss amount, that counsel never told him that arguing $5,800 was a "dead bang loser[,]" and that he learned at sentencing that the Government was arguing against acceptance of responsibility. (Mot. to Vacate Hr'g Tr. at 7, 8, 10.) Movant testified that, when the Court expressed concern at sentencing regarding the loss amount, counsel asked him if he was sticking with $5,800, and he said "yes" because that was the amount in his indictment, that was the amount they had argued for, and he did not really understand relevant conduct. (*Id*. at 13.) On cross examination, Movant added that counsel had told him that the loss amount could be over $150,000 or $200,000; that he knew there was a risk that he could be held responsible for a $168,000 or more loss amount and for more than fifty victims; and that he stuck with the $5,800 loss amount "going off [counsel's] expertise." (*Id*. at 15, 20-21, 30.) Movant further testified that he wrote to the District Judge after sentencing because he did not agree with the Court's conclusion regarding his role in the offense,



AO 72A
(Rev.8/82)

the loss amount, and the number of victims and did not think that he was responsible for the loss amount or the number of victims as found by the Court. (*Id.* at 35-36.)

Additionally, testimony and exhibits introduced at the hearing show that before Movant pleaded guilty, Mr. Treadaway created a guidelines analysis, based on discovery material, showing a best case possibility (a loss amount of less than $10,000, less than ten victims, and an eight offense level) and showing a worst case possibility (a loss amount of over $200,000, more than fifty victims, and a twenty-eight offense level). (Resp't Ex. 13, Attach; Mot. to Vacate Hr'g Tr. at 73-75.) On the day before pleading guilty, Movant went over the analysis with counsel and signed it. (*Id.*)

Mr. Treadaway testified that he had been of the opinion that the Government more than likely could establish losses in excess of $75,000 and victims in excess of twenty or twenty-five, that he had discussed the issue with Movant before sentencing, and that Movant's position had been that counsel needed to present his case such that he was responsible for only $5,800 and would receive probation. (Mot. to Vacate Hr'g Tr. at 46-47.) Counsel stated that he advised Movant that his directions were very difficult if not impossible and advised him of the cons of his position, including loss of acceptance of responsibility. (*Id.* at 47, 65.) Counsel stated that, notwithstanding



AO 72A
(Rev.8/82)

his advice, Movant only grudgingly allowed counsel to argue in the sentencing memorandum that the loss may go as high as $25,000. (*Id*. at 47.)

Mr. Treadaway also testified regarding the advice that he gave Movant after the Court, at sentencing, voiced its concern on acceptance of responsibility. Mr. Treadaway testified that he could not recall his exact words to Movant "but it was to the effect of you're being given a clear signal by the Court that the Court is not accepting what you're instructing me to say. This is an opportunity to back off of this instruction and allow me to address the Court on your behalf in a different manner." (*Id*. at 45.) Counsel testified that his advice to Movant was "to allow me to address the Court by accepting responsibility for more of the monetary amount[, which] I felt like was the main thing the Court was interested in, if not the number of victims that were being alleged by the government." (*Id*. at 45-46.) Counsel stated that he advised Movant, "it's clear the Judge is not going along with what we're suggesting here, and you really need to allow me more latitude to address these facts in a more credible manner, and no was the answer." (*Id*. at 70.) Counsel testified that Movant responded that he would only accept the $5,800 amount in the indictment to which he had pleaded guilty. (*Id*. at 46.)



AO 72A
(Rev.8/82)

At the conclusion of the evidentiary hearing, the undersigned asked the parties to submit further briefing, with the following concerns in mind – whether counsel adequately advised Movant that he might lose acceptance of responsibility and what counsel's duties were if Movant was adequately advised but still wished to argue the lower loss amount. (*See id.* at 91-92.) The parties' arguments, as supplemented after the hearing, are below.

**3. Parties' Arguments**

Movant argues that counsel performed ineffectively at sentencing when he foolishly argued that Movant was responsible for losses of only $5,804.83 and for less than fifty victims, resulting in Movant losing a three-point reduction for acceptance of responsibility. (Mot. to Vacate at 13-15.) Movant asserts that "[a] defense attorney is not required to take foolish positions even if his or her client tells him to do so. . . . [T]he only decisions by the client that the attorney must follow are on the question of whether to plead guilty, to testify, to waive a jury trial or whether to appeal. All other issues are left up to the attorney." (*Id.* at 14.) Movant argues that counsel's decision to simply follow Movant's instructions prejudiced him. (*Id.* at 14-15.)

In his post-hearing brief, Movant acknowledges that Mr. Treadaway informed him that the Government was advocating for a high loss figure that could be supported



AO 72A
(Rev.8/82)

by the discovery material. (Mov't Post-Hr'g Br. at 1-2, ECF No. 113.) Movant states that "the District Court's statements, the government's arguments, and Mr. Treadaway's professional analysis all made it clear that continuing with the argument for a $5,800 loss calculation would assure that [Movant] would lose the reduction for acceptance of responsibility." (*Id*. at 11.) Movant states that

> [he] clearly did not comprehend the consequences of his instructions to counsel. Mr. Treadaway tried to make [him] understand that arguing for the amount in the indictment was a sure loser, but . . . was struck by the almost blind faith that [he, Movant,] had in a sentence with no further incarceration. Even after they lost the crucial issue of acceptance of responsibility, [Movant] continued to believe that the matter was proceeding well. . . . .

(*Id.* at 11.) Movant argues that "[d]espite the lack of clearly applicable authority," no reasonable lawyer would blindly follow a client's instructions to advance an argument that is certain to lose. (*Id*. at 10-12.) Movant further asserts prejudice because he lost acceptance of responsibility and because he probably would have received a sentence below the 46-57 month guidelines range that would have applied if he had accepted responsibility. (*Id*. at 13.)

The Government argues that counsel was not ineffective for following Movant's instructions on the loss amount and that it was reasonable of counsel not to misrepresent the amount for which Movant accepted responsibility. (Resp't Resp.



AO 72A
(Rev.8/8
2)

at 10-11, ECF No. 103.) The Government further asserts that Movant overruled his counsel's guidance, insisted on a $5,800 loss amount, and persisted in his position after sentencing, and that Movant has not shown what course counsel should have taken that would have made acceptance of responsibility reasonably probable. (Resp't Post-Hr'g Br. in Resp. at 18, ECF No. 115.)

**4. Law and Recommendation**

A criminal defendant possesses a Sixth Amendment right to "reasonably effective" legal assistance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To show constitutionally ineffective assistance of counsel, a petitioner must establish that (1) counsel's representation was deficient and (2) counsel's deficient representation prejudiced him. *Id.* at 690-92. The Court may resolve an ineffective assistance claim based on either of the above prongs. *Pooler v. Sec'y, Fla. Dep't of Corr.*, 702 F.3d 1252, 1269 (11th Cir. 2012).

Under the first prong, a petitioner must show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. The court must be "highly deferential" and must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant



AO 72A
(Rev.8/82)

must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id.* at 689 (citation omitted). "[A] strategic decision to pursue less than all plausible lines of defense will rarely, if ever, be deemed ineffective if counsel first adequately investigated the rejected alternatives[,]" and "will be held ineffective only if it was so patently unreasonable that no competent attorney would have chosen it." *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983); *Provenzano v. Singletary*, 148 F.3d 1327, 1331 (11th Cir. 1998) (" 'Three different defense attorneys might have defended Waters three different ways, and all of them might have defended him differently from the way the members of this Court would have . . . ,' [but i]n order to show that an attorney's strategic choice was unreasonable, a petitioner must establish that no competent counsel would have made such a choice." (quoting *Waters v. Thomas*, 46 F.3d 1506, 1522 (11th Cir. 1995))).

An "[i]nformed evaluation of potential defenses to criminal charges and meaningful discussion with one's client of the realities of his case are cornerstones of effective assistance of counsel." *Mulligan v. Kemp*, 771 F.2d 1436, 1440 (11th Cir. 1985) (quoting *Gaines v. Hopper*, 575 F.2d 1147, 1149-50 (5th Cir. 1978) (internal quotation marks omitted). Generally, in guiding his client, "[n]o reasonable lawyer would forgo competent litigation of meritorious, possibly decisive claims" for



AO 72A
(Rev.8/82)

a strategy with a remote chance of success. *Huynh v. King*, 95 F.3d 1052, 1057 (11th Cir. 1996), corrected (Nov. 27, 1996) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 383 n.7 (1986)) (internal quotation marks omitted)). However, "[t]he accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal[.]" *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Further, in choosing which defense or defenses to pursue, "a defendant's Sixth Amendment rights are his alone, and . . . trial counsel, while held to a standard of 'reasonable effectiveness,' is still only an assistant to the defendant and not the master of the defense." *Mulligan*, 771 F.2d at 1441 (discussing choice to pursue alibi defense).

As the master of his defense, a defendant may give counsel information that indicates the futility of a possible strategy or may affirmatively instruct counsel against a particular strategy. *Cummings v. Sec'y for Dep't of Corr.*, 588 F.3d 1331, 1357 (11th Cir. 2009). In affirmative-instruction cases, counsel's duties do not require him "to disregard a mentally competent client's sincere and specific instructions about an area of defense and to obtain a court order in defiance of his wishes." *Id.* at 1357 (quoting *Rutherford v. Crosby*, 385 F.3d 1300, 1313 (11th Cir. 2004)) (internal quotation marks omitted) (discussing duty to investigate). The duty to discuss the



AO 72A
(Rev.8/82)

realities of the case and to allow a competent defendant to be the master of his defense combine, and when counsel "is commanded by his client to present a certain defense, and if he does thoroughly explain the potential problems with the suggested approach, then his ultimate decision to follow the client's will [] not be lightly disturbed." *Mulligan*, 771 F.2d at 1442. "Because we recognize that a defendant must have this broad power to dictate the manner in which he is tried, it follows that, in evaluating strategic choices of trial counsel, we must give great deference to choices which are made under the explicit direction of the client." *Id.* at 1441.

In an exception to the above standard, counsel should not blindly follow a defendant's instructions when "the defendant has a possible mental impairment or the defendant's instructions are not explicit or are less than clear." *Cummings*, 588 F.3d at 1358. Thus, counsel "cannot blindly follow a client's demand that his competency not be challenged." *Agan v. Singletary*, 12 F.3d 1012, 1018 (11th Cir. 1994).[4]

Under the second prong, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

---

[4] There is no suggestion by Movant that he is incompetent or that his instructions to counsel were less than clear.



AO 72A (Rev.8/82)

would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The habeas petitioner has the burden of affirmatively proving prejudice, and a "conceivable effect" on the proceedings does not show prejudice. *Wood v. Allen*, 542 F.3d 1281, 1309 (11th Cir. 2008) (quoting *Strickland*, 466 U.S. at 693) (internal quotation marks omitted).

Here, the Court credits counsel's testimony that he advised Movant on the loss amount that the Government likely could prove and that Movant directed him to argue the low-loss amount. Even if Mr. Treadaway never told Movant that arguing the low-loss amount was a "dead bang loser," the Court credits Mr. Treadaway's testimony that he said as much in different words – (1) he advised Movant that the low-loss position was very difficult if not impossible and that he risked loss of acceptance of responsibility, and (2) he advised Movant that the Court was not accepting the low-loss position and was giving him an opportunity to change his position and that Movant really needed to allow him greater latitude on the loss amount.

Thus, Movant received advice before sentencing that his low-loss position was contradicted by the evidence, was likely to lose, and might risk the loss of credit for acceptance of responsibility. Further, Movant was made aware during the sentencing



AO 72A
(Rev.8/8
2)

proceedings that the risk was coming to fruition – the Government had now clearly stated that based on Movant's low-loss position it would not recommend acceptance of responsibility and the Court had made it clear that it was not accepting the low loss position. Movant nonetheless instructed counsel to continue with the low-loss position. As Movant states, "Mr. Treadaway tried to make [him] understand that arguing for the amount in the indictment was a sure loser, but . . . was struck by the almost blind faith that [he, Movant,] had in a sentence with no further incarceration." (Mov't Post Hr'g Br. at 11.)

Although Movant argues that Mr. Treadaway's response to the situation was not good or strenuous enough, Movant does not present to the Court what Mr. Treadaway could or should have done to avoid his allegedly deficient performance. (*See* Mot. to Vacate at 1-18; Mov't Resp. at 1-3, ECF No. 104; Mov't Post-Hr'g Br. at 1-13; Mov't Post-Hr'g Reply at 1-8; ECF No. 116.) After counsel has advised the client on the facts, the law and the client's options, the Sixth Amendment does not require counsel to go to superhuman lengths to dissuade a client from making bad strategic decisions. *Strickland*, 466 U.S. at 691 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions."); *Johnston v. Singletary*, 162 F.3d 630, 642 (11th Cir. 1998) ("[T]he reasonableness of



AO 72A
(Rev.8/82)

counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. . . . [W]hen the strategy an attorney might otherwise pursue is virtually foreclosed by his client's unwillingness to facilitate that strategic option, it is difficult for our court, in a collateral proceeding, to characterize as "unreasonable" counsel's decision to abandon that otherwise preferable strategy.") (internal marks and citations omitted). *Cf. Thomas v. Wainwright*, 767 F.2d 738, 743 (11th Cir. 1985) ("A criminal defendant's unreasonable refusal to . . . cooperate with his attorney is one of the 'circumstances' that must be considered in determining whether an attorney's assistance was reasonably effective."); *see also Foster v. Strickland*, 707 F.2d 1339, 1343-44 (11th Cir. 1983) ("Petitioner, who preempted his attorney's strategy choice, cannot now claim as erroneous the very defense he demanded. . . .").[5] *Accord, Dowthitt v. Johnson*, 230 F.3d 733, 748 (5th Cir. 2000) ("Counsel will not be deemed ineffective for following their client's wishes"); *Williams v. Calderon*, 41 F. Supp. 2d 1043, 1050 (C.D. Cal. 1998) ("[T]rial counsel is not deemed ineffective for following his client's

[5] The Court recognizes that the result in *Foster* is somewhat undermined by the Eleventh Circuit's subsequent decision in *Cummings*, 588 F.3d at 1357, and other cases, since the claim of ineffectiveness in *Foster* was defense counsel's failure to pursue an insanity defense and *Cummings* speaks of a competent client's affirmative instructions outside. However, aside from the issue of mental competency, it would appear that the quoted portion of the *Foster* opinion remains persuasive in recommending a resolution to the issue under discussion.



AO 72A (Rev.8/82)

wishes."); *United States v. Khosnevissan*, Crim. No. 87-0132, 1989 WL 69528, at *11 (E.D. Pa. June 19, 1989) ("A counsel's actions will not be found unreasonable if they result from strategies insisted upon by the defendant.").

Thus, without any showing that Mr. Treadaway had a viable alternative that reasonably may have changed the outcome, the Court cannot conclude that Mr. Treadaway was deficient for following his competent client's explicit instructions. The record shows that Mr. Treadaway thoroughly explained to Movant the potential problems of Movant's position, and his ultimate decision to follow Movant's instruction will not be disturbed. *See Mulligan*, 771 F.2d at 1442.

Additionally, there is a lack of prejudice because there is no showing that there was a different action that counsel could have taken that reasonably would have resulted in Movant acquiescing at his sentencing hearing to a higher loss amount. *See Cummings*, 588 F.3d at 1360 ("Petitioner must show a reasonable probability that – if Petitioner had been advised more fully . . . or if trial counsel had requested a continuance – Petitioner would have authorized" a different strategy. (citation and internal quotation marks omitted)). The Government has suggested that perhaps counsel could have sought a recess to have more time to convince Movant on the proper loss amount or simply ignored Movant and conceded to a higher loss amount.



AO 72A
(Rev.8/8
2)

(Resp't Post-Hr'g Br. in Resp. at 28.) The evidence does not convince the Court that either of those actions would have had a reasonable chance of changing Movant's position or the outcome. As stated by Movant, "the District Court's statements, the government's arguments, and Mr. Treadaway's professional analysis all made it clear that continuing with the argument for a $5,800 loss calculation would assure that [Movant] would lose the reduction for acceptance of responsibility." (Mov't Post-Hr'g Br. at 11.) Knowing that the Government had withdrawn its support for acceptance of responsibility and knowing counsel's and the Court's position, Movant persisted in his low-loss position. Further, as shown by Movant's letter to the Court and his discussion of that letter in his recent hearing, Movant continued *after* sentencing to assert that he had been falsely accused and did not think he was responsible for the loss amount or the number of victims as found by the Court. Accordingly, it does not appear reasonably probable that Movant would have agreed to a higher loss amount if counsel had repeated his advice in stronger terms or that Movant would have acquiesced if counsel had attempted to concede to a higher loss amount.

**B. Criminal History Category**

In the PSR, the probation officer assigned Movant a criminal history category of II based on his Gwinnett County convictions for which he was sentenced in September



AO 72A
(Rev.8/82)

2010 and May 2012. (PSR ¶¶ 60, 61.) On the May 10, 2012, sentence, Movant received twenty days in custody and two consecutive twelve-month terms of probation. (*Id*. ¶ 61.) Neither the Government nor Movant objected to the criminal history category. Notably, the crime on which Movant was facing sentence in this Court had occurred beginning on or about April 1, 2013, while Movant was on probation. (*Id.* ¶ 2.)

At the sentencing hearing, the Government informed the Court that it had failed to object that Movant's criminal history category should be III because Movant had committed his current crime while he was on probation and that it was now raising the matter at sentencing. (Sentencing Hr'g Tr. at 5.) Movant's counsel argued that because of the Government's late objection, he had not been able to investigate the matter. (*Id.* at 6.) The Government responded that the fact that Movant had been on probation had been brought up at his detention hearing, and the Government produced a certified copy of the conviction at issue. (*Id.*). The Court observed that it was obvious on review of the PSR that Movant had been on probation at the time of his instant offense. (*Id*.) After conferring with Movant, counsel confirmed to the Court that Movant stated that he had indeed still been on probation when he committed the instant offense. (*Id*.)



AO 72A
(Rev.8/82)

The Court found no objection and thus changed the criminal history category to III. (*Id.*)

Movant now argues that counsel performed ineffectively at sentencing when he conceded that Movant's criminal history category was III after the Government had waived the right to object to the criminal history category of II by failing to do so in a timely manner under Fed. R. Crim. P. 32(f)(1). (Mot. to Vacate at 16-18.) The Government argues that the Eleventh Circuit Court of Appeals does not apply the waiver rule suggested by Movant, that Movant does not dispute the facts that qualify him for a criminal history category III, and that there is no reasonable probability that an objection would have changed the outcome. (Resp't Resp. at 13.)

The *Strickland* standard again applies. Generally, the parties should raise objections to the PSR within fourteen days of receiving the PSR. Fed. R. Crim. P. 32(f)(1). The Court has discretion, however, for good cause, to allow a party to make a new objection at any time before sentence is imposed. Fed. R. Crim. P. 32(i)(1)(D). It is apparent on review of the sentencing transcript that the Court implicitly found good cause for accepting the Government's late objection and that a different approach by counsel on this matter would not have had a reasonable chance of changing the outcome.

As a result, Movant is not entitled to relief on this ground.



AO 72A
(Rev.8/82)

## IV. Certificate of Appealability (COA)

Under Rule 11 of the Rules Governing § 2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." The Court will issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The applicant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Melton v. Sec'y, Fla. Dep't of Corr.*, 778 F.3d 1234, 1236 (11th Cir. 2015) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)) (internal quotation marks omitted), *cert. denied*, _ U.S. _, 136 S. Ct. 324 (2015).

It is recommended that a COA is unwarranted because it is not debatable that Movant has failed to establish ineffective assistance of counsel in his sentencing proceedings. If the Court adopts this recommendation and denies a COA, Movant is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts.



AO 72A
(Rev.8/82)

## V. Conclusion

For the reasons stated above,

**IT IS RECOMMENDED** that Movant's motion, [Doc. 95], to vacate, set aside, or correct his federal sentence be **DENIED**.

**IT IS FURTHER RECOMMENDED** that a COA be **DENIED**.

The Clerk of Court is **DIRECTED** to withdraw the referral of this § 2255 motion from the assigned Magistrate Judge.

**IT IS SO RECOMMENDED and DIRECTED**, this 28th day of June, 2016.

ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE



AO 72A
(Rev.8/82)